At a Court of Oyer and Terminer held at this term, Thomas I. Horskin was indicted fur the murder of John Bennett in the first degree, *Page 117 
and was tried at an adjourned session thereof on the 10th day of December 1862. The evidence was that on the night of the 22d of September preceding, a number of young men who were in the habit of resorting to the home of the prisoner in the town of Milford, finding it closed and the family had gone to bed, in wanton mischief merely, commenced and continued for some time to make loud noises outside of the door and about the street in front of it, and after throwing pebbles and small sticks against it, would run off round the corner, and soon return and repeat the same thing, the prisoner in the mean while cursing them aloud in his house and threatening to shoot them with his gun, and several times making his way to his front door, with it and opening it, as if for that purpose. Soon after they had ceased their mischief and left, however, the deceased who was intoxicated and noisy, went to the door to get into the house when the prisoner shot him from it with his gun in the abdomen, inflicting a wound of which he died in a few hours. There was no witness to the act, but the prisoner had from the first admitted the shooting and killing of the deceased, and that he knew at the time that the person whom he shot was John Bennett, but he at the same time had always declared that he was then trying to break into his house with a piece of scantling four inches thick and from four to five feet in length, and had forced the door open with it when he shot him. But this was not seen or confirmed by any one who was in bed in the house at the time, who heard all that preceded it, as before stated, and the shooting of the gun in the house, and also the exclamations of the deceased when he was shot by it just outside of the door, though two of them were examined as witnesses in the case. The character of the prisoner as a peaceable and quiet man was proved by several witnesses called in reply.
For the prisoner it was contended that the killing under the circumstances could not amount to murder of the *Page 118 
first degree, as there was provocation of no slight degree, and also a want of all those indications of deliberation and design to kill the deceased or to do him any personal injury which can alone constitute the badge of express malice; nor could it amount under the circumstances even to murder of the second degree under the statute. And, if the jury should be satisfied from the evidence that the deceased was endeavoring to break into the prisoner's house when he shot him, on the authority of Cook's case, Cro. Car. 537, the offense would only be manslaughter; or if he shot him under a reasonable apprehension that the deceased was about to commit a felony, it would be manslaughter merely. But if he did it under the belief that his life, or the life of his wife, or his family or his house was in danger, and it was committed in defence of either, it was neither murder or manslaughter, but excusable homicide.Whart. Am. Cr. Law, sec. 1026.
The State cited Commonwealth v. Drew et al., 4 Mass. 391.
There was no question in this case that the prisoner killed the deceased, John Bennett, and such being the case the law presumes that it was criminally and maliciously done, until the contrary appears from the evidence in the case; and any fact in it which showed a formed design and a sedate deliberate purpose to shoot him, that shooting having resulted in his death very soon afterwards, was evidence of express malice aforethought, and of murder of the first degree under the statute. Malice aforethought is implied by law from any deliberate, cruel act committed by one person against another however sudden; as where one person kills another suddenly without any, or without a considerable provocation, for no one, unless of an abandoned heart, would be guilty of such an act upon a slight or no apparent cause; and when it is so committed, that is to say, with malice aforethought implied by law, and *Page 119 
not with that sedate deliberate mind and formed design which evinces express malice aforethought, it will be murder of the second degree under the statute.
It is true to a certain extent, that a man's house is his castle, butCook's case which had been cited should be limited to the peculiar class of cases of which it constituted a leading precedent; for it is now generally admitted to have gone quite as far as it should have gone, even in such a case. When an attempt is made to commit arson or burglary in the dwelling-house of another, the owner or any member of his family, or even a lodger may kill the offender to prevent the intended mischief. But an owner is not authorized to fire a gun or pistol, or to use a deadly weapon upon every invasion of, or breaking into his dwelling-house which may be forcibly made in the night time. He should, if he has a reasonably opportunity, endeavor to remove the trespasser without having recourse to the last extremity, for a civil trespass will not excuse the firing of a gun at the trespasser in a sudden fit of anger and passion. When a person, however, is trying to break into the dwelling-house of another in the night time with the intent to commit a felony, the owner may at once kill him, for in such a case he may at once resort to the last extremity in resisting and repelling such an invasion of his dwelling, and yet in such a case it should reasonably appear that the object of such breaking, or effort to break into it, was to commit a felony; and if in such a case the offender be slain, it is excusable or justifiable homicide. A man may repel force by force in defence of his person, his habitation or his property, against one or many who manifestly intend and endeavor by violence or surprise to commit a known felony on either.
If the jury were satisfied from the evidence that the deceased made a forcible effort to break into the house of the prisoner on the night he was killed by him, they should be further satisfied that he did it with an intent to commit a felony in it, or they could not return a verdict of *Page 120 
not guilty on that ground. The evidence, however, was before them and it was for them alone to decide what were the facts and circumstances proved in the case. If there had been no effort on the part of the deceased to break into his house, as alleged by the prisoner, there could be no ground whatever for considering it a case of manslaughter merely; and then whether it amounted to the crime of murder of the first or second degree, would depend on the coolness and deliberation with which it was done by the prisoner in their judgment. They should give the prisoner however, the benefit of any reasonable doubt they might have in the case.
 Verdict — Guilty of murder of the first degree.